**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

STEVEN ROY CHRISTANELLI,

       Plaintiff,

v.                                          No. CV 18-827 CG

ANDREW SAUL, Commissioner of the
Social Security Administration,

       Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** is before the Court on Plaintiff Steven Roy Christanelli's *Motion to Reverse for Payment of Benefits, or in the Alternative, to Remand for a Rehearing* ("Motion"), (Doc. 19), filed April 29, 2019; Defendant Commissioner Andrew Saul's *Response to Plaintiff's Motion to Reverse or Remand for Rehearing* ("Response"), (Doc. 21), filed June 28, 2019; and Mr. Christanelli's *Reply to Defendant's Response to Motion to Reverse or Remand for Rehearing* ("Reply"), (Doc. 22), filed July 11, 2019.

Mr. Christanelli filed an application for supplemental security income on June 21, 2012, alleging disability beginning August 25, 2011. (Administrative Record "AR" 19). Mr. Christanelli claimed he was limited in his ability to work due to bipolar disorder, anxiety, post-traumatic stress disorder ("PTSD"), a learning disability, and chronic obstructive pulmonary disease ("COPD"). (AR 184). Mr. Christanelli's application was denied initially on February 14, 2013, and upon reconsideration on July 1, 2013. (AR 19). A request for a hearing was filed, and a hearing was held on June 11, 2014, before Administrative Law Judge ("ALJ") Ann Farris. (AR 34). At the hearing, Mr. Christanelli

and Mary Diane Weber, an impartial vocational expert ("VE"), testified, and attorney Michelle Baca represented Mr. Christanelli. (AR 34-67).

On September 26, 2014, ALJ Farris issued her decision, finding Mr. Christanelli has not been disabled at any time since June 21, 2012, the date the application was filed. (AR 27). Mr. Christanelli requested review by the Appeals Council, (AR 7), which was denied, (AR 1-6). Mr. Christanelli then appealed the Commissioner's decision to the United States District Court for the District of New Mexico. *Christanelli v. Social Security Administration*, No. CV 16-291 SMV. On August 24, 2017, the Court granted Mr. Christanelli's Motion to Remand the case to the Commissioner, finding that ALJ Farris failed to apply the correct legal standards in evaluating medical opinion evidence. *Christanelli*, No. CV 16-291 SMV, (Doc. 23).

On remand, the Appeals Council issued an order vacating the Commissioner's prior decision and remanding the case to an ALJ for further proceedings consistent with the Court's Order. (AR 911-13). A second hearing was held on May 8, 2018, before ALJ Farris. (AR 846). Mr. Christanelli and VE Shelly K. Eike testified at the hearing, and attorney Michelle Baca represented Mr. Christanelli at the hearing. (AR 846-873). On June 14, 2018, ALJ Farris issued a decision again finding that Mr. Christanelli has not been disabled since June 21, 2012, the date the application was filed. (AR 838). Pursuant to 20 C.F.R. § 404.984, this decision by ALJ Farris is the final decision of the Commissioner for purposes of this appeal.[1]

---

[1] When a case is remanded by a district court for further consideration, the ALJ's decision on remand becomes the final decision of the Commissioner unless the claimant files written exceptions to the ALJ's decision within 30 days of receipt of the decision. 20 C.F.R. § 404.984(b). Here, Mr. Christanelli did not file written exceptions to ALJ Farris' June 14, 2018 decision, and the time for doing so has passed. Therefore, ALJ Farris' decision is the final decision of the Commissioner for purposes of this appeal.

Mr. Christanelli now raises the following arguments on appeal of ALJ Farris' second decision: (1) ALJ Farris failed to properly consider opinions from the following medical providers: examining psychologist Clifford Morgan, Ph.D., treating psychiatrist Gregory M. Gillette, M.D., treating Licensed Professional Clinical Counselor Robert K. Becher, and non-examining psychiatrists Jill Blacharsh, M.D., and Paul Cherry, Ph.D.; (2) ALJ Farris failed to properly weigh the evidence and Mr. Christanelli's limitations in formulating his residual functional capacity ("RFC"); and (3) the Appeals Council should have remanded this case pursuant to *Lucia v. SEC*, 138 S.Ct. 2044 (2018). (Doc. 19 at 5-26). The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the Administrative Record. (Doc. 13). Because ALJ Farris erred in her consideration of the opinions of Dr. Morgan, Mr. Becher, Dr. Gillette, Dr. Blacharsh, and Dr. Cherry, the Court finds that Mr. Christanelli's Motion is well-taken and should be **GRANTED** and this case **REMANDED** for further proceedings.

## I.    Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331

F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or to show . . . that she has done so, are also grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.    Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits and supplemental security income claims, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A), 20 C.F.R. §§ 404.1505(a), 416.905(a). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

At the first four steps of the SEP, the claimant bears the burden of showing: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) meet or equal one of the "Listings"[2] of presumptively disabling impairments; or (4) she is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation process. At step five the Commissioner bears the burden of showing that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

### III. Background

Mr. Christanelli applied for supplemental security income due to: bipolar disorder, anxiety, PTSD, a learning disability, and COPD. (AR 184). At step one, ALJ Farris determined that Mr. Christanelli had not engaged in substantial gainful activity since June 21, 2012, the application date. (AR 830). At step two, ALJ Farris concluded that Mr. Christanelli has the following severe impairments: COPD with asthma, obesity, major depressive disorder, generalized anxiety disorder, antisocial personality disorder, learning disabilities in math and written expression, PTSD, and polysubstance dependence. *Id.* At step three, ALJ Farris determined that none of Mr. Christanelli's impairments, solely or in combination, equaled one of the listed impairments in 20 C.F.R. §§ 416.920(d), 416.925, and 416.926. (AR 831-33).

At step four, ALJ Farris found that Mr. Christanelli has the RFC to perform less than a full range of light work as defined in 20 C.F.R. § 416.967(b), with the following limitations: he must avoid exposure to pulmonary irritants, including dusts, fumes, odors, and gases; he should not be required to interact with the public; he can have only superficial interactions with coworkers, and only occasional, limited interactions with supervisors; he is unable to work in close proximity with others, meaning within about two feet, unless there is a barrier between them; and he should not be required to perform math calculations, work at a production pace, or perform tandem tasks. (AR 833).

In formulating Mr. Christanelli's RFC, ALJ Farris stated that she considered Mr. Christanelli's symptoms and the extent to which those symptoms can reasonably be accepted as consistent with objective medical and other evidence, as required by 20

C.F.R. § 416.929 and Social Security Ruling ("SSR") 16-3p. *Id.* ALJ Farris also stated

that she considered opinion evidence in accordance with 20 C.F.R. § 416.927. *Id.* ALJ

Farris found that Mr. Christanelli's statements concerning the intensity, persistence and

limiting effects of his symptoms are not fully supported by the evidence in the record.

(AR 834).

In considering the medical opinion evidence, ALJ Farris gave little weight to

consultative psychological examiner Dr. Morgan's opinions regarding Mr. Christanelli's

ability to work and legal problems, and gave great weight to his opinions regarding Mr.

Christanelli's learning difficulties and social limitations. (AR 835). She reasoned that Dr.

Morgan's opinions are "from before the relevant period and the extent of the functional

limitations are somewhat unclear." *Id.* ALJ Farris then gave partial weight to the

opinions of consultative psychological examiner Dr. Brimberg, stating the limitations

found by Dr. Brimberg are "relatively unclear and appear to be inconsistent with other

evidence showing angry and anxious moods." (AR 836).

Next, ALJ Farris gave little weight to the opinions of treating psychiatrist Dr.

Gillette because they do not cite to objective evidence or provide a functional analysis,

and because the ability to work is an issue reserved for the Commissioner. *Id.* ALJ

Farris noted the opinions of Mr. Becher, Mr. Christanelli's treating counselor, and stated

they do not cite to medical evidence and are not consistent with evidence in the record.

However, ALJ Farris did not state what weight she assigned to his opinions. Finally, ALJ

Farris gave great weight to the opinions of state agency psychological consultants Dr.

Cherry, Dr. Blacharsh, and Dr. Chiang, because they are consistent with the evidence in

the record. (AR 836-37).

ALJ Farris next found that Mr. Christanelli has been unable to perform any of his past relevant work, so the ALJ proceeded to step five. (AR 837). At step five, ALJ Farris noted that on the date the application was filed Mr. Christanelli was defined as a younger individual in accordance with the Regulations. *Id.* ALJ Farris also determined that Mr. Christanelli has at least a high school education and is able to communicate in English. *Id.* ALJ Farris noted that the VE testified at the hearing that an individual with Mr. Christanelli's same age, education, work experience, and RFC could perform the jobs of office cleaner, laundry folder, and label coder. (AR 838). After finding the VE's testimony consistent with the Dictionary of Occupational Titles, ALJ Farris adopted the VE's testimony and concluded that Mr. Christanelli is not disabled. *Id.*

## IV.    Analysis

In his Motion, Mr. Christanelli argues that ALJ Farris failed to properly consider the opinions of Dr. Morgan, Dr. Gillette, Mr. Becher, Dr. Blacharsh, and Dr. Cherry. (Doc. 19 at 5-26). Mr. Christanelli also claims that ALJ Farris failed to properly weigh other evidence of Mr. Christanelli's limitations in formulating his RFC, and that the Appeals Council should have remanded this case pursuant to the holding of *Lucia v. SEC. Id.* at 16-26. The Commissioner responds that ALJ Farris properly weighed all of the medical opinion evidence and other evidence in the record in formulating Mr. Christanelli's RFC. (Doc. 21 at 10-21). The Commissioner further argues the Court should reject Mr. Christanelli's *Lucia* claim because it was not raised before the ALJ or the Appeals Council during the administrative process. *Id.* at 21-32. In his Reply, Mr. Christanelli maintains that ALJ Farris erred in her consideration of medical opinion

evidence and other evidence in the record regarding his limitations, and argues that he

was not required to raise his *Lucia* claim before the Agency. (Doc. 22 at 3-11).

ALJs must evaluate and weigh every medical opinion in the record. 20 C.F.R. §

416.927(b)-(c); *see also* SSR 06-03p, 2006 WL 2329939. Every medical source opinion

should be weighed by the ALJ in consideration of the following applicable "deference

factors":

> (1) the length of the treatment relationship and the frequency of
> examination; (2) the nature and extent of the treatment relationship,
> including the treatment provided and the kind of examination or testing
> performed; (3) the degree to which the physician's opinion is supported by
> relevant evidence; (4) consistency between the opinion and the record as
> a whole; (5) whether or not the physician is a specialist in the area upon
> which an opinion is rendered; and (6) other factors brought to the ALJ's
> attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citation omitted); *see*

*also* 20 C.F.R. § 416.927(c). Ultimately, the ALJ must give good reasons that are

"sufficiently specific to [be] clear to any subsequent reviewers" for the weight that she

ultimately assigns the opinions. *Langley*, 373 F.3d at 1119 (citation omitted). Failure to

do so constitutes legal error. *See Kerwin v. Astrue*, 244 Fed. Appx. 880, 884 (10th Cir.

2007) (unpublished).

In addition, "treating sources" are generally entitled to more weight than other

sources, given their treatment relationship with the claimant. 20 C.F.R. § 416.927(d)(2).

Accordingly, ALJs must follow a particular, two-step process when evaluating and

weighing opinions from treating sources. 20 C.F.R. § 416.927(b); *see Watkins v.*

*Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003). First, the ALJ must decide whether

the treating source's opinions are "well-supported by medically acceptable clinical and

laboratory diagnostic techniques" and "are not inconsistent with the other substantial

evidence" in the record. 20 C.F.R. § 416.927(c)(2). If the treating source's opinions satisfy both criteria, they are entitled to controlling weight. *Id.*

If a treating source's opinions are not entitled to controlling weight, they are still entitled to deference. SSR 96-2p, 1996 WL 374188, at *4. In deciding how much weight to give a treating source's opinion, the ALJ must consider the factors set forth in 20 C.F.R. § 416.927(c)(1)-(6). The ALJ must "make clear how much weight the [treating source's] opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified . . . for the weight assigned." *Krauser*, 638 F.3d at 1324 (citing *Watkins*, 350 F.3d at 1330); SSR 96-2p, 1996 WL 374188, at *5 (an ALJ must "give good reasons" that are "sufficiently specific to make clear to any subsequent reviewers the weight" she gave to the opinion "and the reasons for that weight"); *but see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (an ALJ is not required to "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion."). Moreover, in rejecting a treating source's opinion, the ALJ "may not make speculative inferences from medical reports" and may not reject the opinion based on her own credibility judgments, speculation, or lay opinion. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002). Rather, an ALJ may only reject a treating source's opinion based on outright contradictory medical evidence. *Id.*

An ALJ's reasoning is not sufficiently specific if she merely states an opinion is unsupported by or inconsistent with the medical evidence without further explanation. *Langley*, 373 F.3d at 1122-23; *see also Cagle v. Astrue*, 266 Fed. Appx. 788, 792-93 (10th Cir. 2008) (unpublished). In addition, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a

finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citations omitted). Instead, an ALJ "must . . . explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7. Further, the Commissioner may not rationalize the ALJ's decision post hoc, and "[j]udicial review is limited to the reasons stated in the ALJ's decision." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted).

### A. Dr. Morgan's Opinions

Mr. Christanelli first claims that ALJ Farris improperly weighed and considered the opinions of consultative psychologist Dr. Morgan because she rejected some of his opinions without explanation. (Doc. 19 at 6-8). The Commissioner argues in response that many of Dr. Morgan's opinions are consistent with ALJ Farris' RFC determination, and that ALJ Farris sufficiently explained why she discounted the rest of his opinions. (Doc. 21 at 17-18).

In March 2011, Dr. Morgan conducted a consultative psychological evaluation and testing of Mr. Christanelli. (AR 263). Dr. Morgan diagnosed Mr. Christanelli with depressive disorder, anxiety disorder, PTSD, and polysubstance and alcohol dependency in remission. (AR 267). He also made the following findings with regard to Mr. Christanelli's mental abilities: moderately impaired delayed recall; difficulty with processing speed, visual short-term memory, and motor speed; and a learning disability in spelling, writing, and math. (AR 266-67). Based on these findings, Dr. Morgan opined that Mr. Christanelli has "serious" limitations in his abilities to write reports, follow written instructions, interpret written material, relate to others, problem solve, organize, and plan. (AR 268-69). He additionally opined that Mr. Christanelli was limited in his abilities

to be consistent and reliable in his work habits, and he has difficulty tolerating changes in routine job tasks. (AR 269).

In making the RFC determination, ALJ Farris stated she gave great weight to Dr. Morgan's opinions regarding Mr. Christanelli's "learning difficulties and social limitations," and she gave little weight to his opinions "regarding the ability to work and legal problems." (AR 835). ALJ Farris' RFC determination does not reflect Dr. Morgan's opinions that Mr. Christanelli is limited in his abilities to: write reports; follow written instructions; interpret written material; problem solve, organize, and plan; and be consistent and reliable in his work habits. *Compare* (AR 23) *with* (AR 268-69). Therefore, ALJ Farris was required to adequately explain why she did not include these limitations in her RFC determination. *See* SSR 96-8p, 1996 WL 374184, at *7 (explaining that if an ALJ's RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted).

ALJ Farris states that Dr. Morgan's opinions are "from before the relevant period" and "the extent of the functional limitations are somewhat unclear." (AR 835). However, this reasoning does not explain why ALJ Farris rejected portions of Dr. Morgan's opinions and accepted others. The Tenth Circuit has held that a doctor's findings and opinions that are dated prior to the alleged onset date "are nevertheless relevant to the claimant's medical history and should be considered by the ALJ." *Hamlin*, 365 F.3d at 1215. Moreover, while ALJ Farris stated she gave great weight to Dr. Morgan's opinions relating to Mr. Christanelli's "learning difficulties," she did not adopt those findings as part of her RFC determination. For example, Dr. Morgan opined that Mr. Christanelli's learning disability resulted in serious limitations with writing reports, following written

instructions, and interpreting written materials. (AR 268). Yet, ALJ Farris' RFC determination contains no limitations regarding writing or reading. This is legal error because, "[i]f the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7.

The Commissioner argues that ALJ Farris did not err in rejecting portions of Dr. Morgan's opinions because the RFC determination limits Mr. Christanelli to a "greatly reduced range of light work with substantial reductions in social interaction, working around people, and no work that required mathematical calculations, production rate pace, or tandem tasks." (Doc. 21 at 18). Nevertheless, the RFC determination does not encompass Dr. Morgan's opinions regarding Mr. Christanelli's limitations regarding writing, reading, and consistency in his work habits. ALJ Farris' failure to sufficiently explain why those opinions were rejected precludes the Court from being able to meaningfully review her findings. *See Clifton*, 79 F.3d 1007, 1009 (10th Cir. 1996) (holding that "the absence of findings supported by specific weighing of the evidence" in the record leaves the Court unable to assess whether relevant evidence adequately supports the ALJ's conclusion); *see also Haga*, 482 F.3d at 1208 ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion taking only the parts that are favorable to a finding of nondisability."). For these reasons, the Court finds that ALJ Farris erred in her consideration of Dr. Morgan's opinions.

### B. Dr. Gillette and Mr. Becher's Opinions

Mr. Christanelli also claims ALJ Farris did not properly weigh and consider the opinions of his treating psychiatrist Dr. Gillette and treating counselor Mr. Becher. (Doc.

19 at 8-14). He argues ALJ Farris erred by failing to give adequate reasons for rejecting Dr. Gillette's opinions and failing to state what weight she gave Mr. Becher's opinions. *Id.* at 9-10. Further, Mr. Christanelli contends ALJ Farris did not discuss other evidence in the record that supports Dr. Gillette and Mr. Becher's opinions. *Id.* at 10-14.

The Commissioner counters that ALJ Farris reasonably assigned Dr. Gillette's opinions little weight, and that her failure to assign Mr. Becher's opinions specific weight is "inconsequential" because they are almost identical to those of Dr. Gillette. (Doc. 21 at 18-21). The Commissioner also contends these providers' findings amount to an opinion that Mr. Christanelli cannot work, which is an issue reserved to the Commissioner, and their opinions did not cite any objective evidence or treatment notes. *Id.* at 18-19. Finally, the Commissioner states Dr. Gillette and Mr. Becher's opinions are inconsistent with the conservative treatment Mr. Christanelli received and fail to identify any specific functional limitations. *Id.* at 19-20.

Mr. Christanelli was referred to Mr. Becher in April 2016 for his psychological symptoms. (AR 1994). Mr. Becher treated Mr. Christanelli on a monthly basis for almost two years, and made the following findings regarding Mr. Christanelli's mental impairments: constricted and irritable mood and affect; limited insight and judgment; severe depression; severe anxiety; antisocial traits; anger and rage; and insomnia. (AR 1941, 1944-45, 1950-51, 1956-58, 1964-66, 1969-74, 1977-86, 1991-92, 1997-98, 2000-07). Mr. Becher diagnosed Mr. Christanelli with chronic PTSD and bipolar disorder. (AR 2031). In December 2017, Mr. Christanelli began seeing Dr. Gillette for his mental health treatment because Dr. Gillette could offer better availability than Mr. Becher. (AR 1995). Dr. Gillette made the following findings regarding Mr. Christanelli's

mental impairments: poor judgment and insight; anxiety; depressive and manic episodes; irritable mood; anger; and emotionally reactive. (AR 2009-11, 2016-18, 2022-23). Dr. Gillette also diagnosed Mr. Christanelli with bipolar disorder and PTSD. (AR 2013). On April 2, 2018, Mr. Becher and Dr. Gillette wrote letters opining that Mr. Christanelli is unable to work due to his mental health. (AR 2031, 2034). Specifically, Mr. Becher stated Mr. Christanelli cannot work because he "has significant mood swings, is quick to anger, and has violent behaviors," (AR 2031), and Dr. Gillette stated Mr. Christanelli cannot work because "his mental health diagnosis causes [him] to have severe mood swings which include violent behaviors," (AR 2034).

ALJ Farris rejected Dr. Gillette's opinions because they do not cite to objective medical evidence or provide a functional analysis, and because the ability to work is an issue reserved for the Commissioner. (AR 836). First, ALJ Farris' rejection of Dr. Gillette's opinions because they do not cite to objective medical evidence is a facially valid reason for discounting a medical opinion. *See* SSR 06-03p, 2006 WL 2329939, at *3 (explaining that the degree to which a source provides support for his or her opinion is an applicable factor to be considered by the ALJ in weighing a medical source opinion). However, ALJ Farris' statement does not accurately reflect the record. Instead, Dr. Gillette's opinions are supported by multiple mental status examinations he conducted which document Mr. Christanelli's mood swings and problems with insight, judgment, and anger. *See* (AR 2009-2023). Moreover, Dr. Gillette's opinions are supported by multiple findings by Mr. Becher and Dr. Tucker that Mr. Christanelli has a very anxious and depressed mood, constricted affect, pressured speech, delusional and paranoid thoughts, ruminative thought processes, and limited or poor insight and

judgment. *See* (AR 1931-2007). ALJ Farris' failure to discuss this evidence is legal error

because, "in addition to discussing the evidence supporting [her] decision, the ALJ must

discuss the uncontroverted evidence [she] chooses not to rely upon, as well as

significantly probative evidence [she] rejects." *Clifton*, 79 F.3d at 1009.

Next, the Court considers ALJ Farris' rejection of Dr. Gillette's opinions because

they do not provide a functional analysis and because Dr. Gillette opines that Mr.

Christanelli cannot work, which is an issue reserved for the Commissioner. While an

ALJ is not required to give "any special significance" to a medical source opinion on

issues reserved to the Commissioner, the ALJ must evaluate and weigh every medical

opinion in the record. 20 C.F.R. § 416.927(d)(3); *see also* SSR 06-03p, 2006 WL

2329939, at *3. Moreover, the Social Security Regulations require ALJs to consider all

medical source opinions which reflect a judgment about the nature and severity of the

claimant's impairments including the claimant's symptoms, diagnosis and prognosis,

and any physical or mental restrictions. *See* 20 C.F.R. § 416.927(a)(2).

Here, Dr. Gillette offered opinions that Mr. Christanelli is limited in his ability to

work due to his mood swings, insight, judgment, and anger, which reflects a judgment

based on Mr. Christanelli's symptoms and diagnoses. As such, ALJ Farris was required

to consider and weigh Dr. Gillette's opinions in accordance with the six factors set forth

in 20 C.F.R. § 416.927(c)(1)-(6), and the inclusion of a "functional analysis" is not one of

those factors. For these reasons, the Court finds that ALJ Farris did not "give good

reasons, tied to the factors specified" in § 416.927(c) for the weight she assigned to Dr.

Gillette's opinions. *Krauser*, 638 F.3d at 1324; *see also Watkins*, 350 F.3d at 1301

(remanding for ALJ to apply the six factors set forth in §§ 404.1527(d) and 416.927(c) to

opinion by a treating physician that the claimant cannot work); *see also McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (explaining that an ALJ may only reject a treating source's opinion based on outright contradictory medical evidence).

The Commissioner argues that ALJ Farris did not err in rejecting Dr. Gillette's opinions because they are inconsistent with the conservative treatment Mr. Christanelli received in the form of medication and counseling. *Id.* at 19. However, this is an improper *post hoc* rationalization by the Commissioner because ALJ Farris did not state that she discounted Dr. Gillette's opinions for this reason. *See Robinson v. Barnhart*, 355 F.3d 1078, 1084 (10th Cir. 2004) (explaining that an ALJ's decision must be evaluated "based solely on the reasons stated in the decision").

With regard to Mr. Becher's opinions, ALJ Farris did not state what weight she gave them. *See* (AR 836). While the Commissioner argues this error is "inconsequential" because Mr. Becher's opinions are almost identical to those of Dr. Gillette, (Doc. 21 at 20, n.9), the Regulations state that ALJs must explain the weight given to medical source opinions. 20 C.F.R. § 416.927(e)(2)(ii); *see also* SSR 96-6p, 1996 WL 374180, at *1 (ALJs must explain the weight given to medical source opinions), and *Clifton*, 79 F.3d at 1009 (holding that "the absence of findings supported by specific weighing of the evidence" in the record leaves the Court unable to assess whether relevant evidence adequately supports the ALJ's conclusion). For these reasons, the Court finds that ALJ Farris did not properly consider the opinions of Dr. Gillette and Mr. Becher which requires remand.

*C. Dr. Blacharsh and Dr. Cherry's Opinions*

Next, Mr. Christanelli claims ALJ Farris erred in her consideration of the opinions of non-examining state agency psychiatrists Dr. Blacharsh and Dr. Cherry. (Doc. 19 at 14-16). Mr. Christanelli contends ALJ Farris committed legal error by stating she gave their opinions "great weight" even though she implicitly rejected them. *Id.* at 15-16. In Response, the Commissioner argues ALJ Farris did not err because her RFC determination is consistent with these doctors' findings. (Doc. 21 at 15-16). The Commissioner further contends any error by ALJ Farris' in weighing the opinions is harmless because she ultimately decided Mr. Christanelli could only perform unskilled work. *Id.* at 16.

Dr. Blacharsh found that Mr. Christanelli has moderate limitations in his abilities to: complete a workday without interruptions from psychological symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions from and respond appropriately to criticism from supervisors; and maintain socially appropriate behavior. (AR 75-76). These limitations were adopted upon reconsideration by Dr. Cherry. (AR 89). In addition, Dr. Blacharsh and Dr. Cherry concluded Mr. Christanelli could "interact appropriately with co-workers and supervisors" and recommended "limited interpersonal interactions." (AR 77, 90). Dr. Blacharsh further commented that Mr. Christanelli's "social skills are a problem as indicated by [D]r. Morgan's report as well as [the claimant's] comment about a man on the bus he took to [the evaluation]." (AR 372).

ALJ Farris stated she gave these opinions great weight because they are consistent with evidence regarding Mr. Christanelli's thought process, intelligence,

behavior, appearance, speech, eye contact, memory, concentration, insight, judgment, mood, affect, delusions, paranoia, anger, and anxiety. (AR 836-87). Despite stating she gave the opinions great weight, ALJ Farris' RFC determination does not account for Dr. Blacharsh and Dr. Cherry's findings that Mr. Christanelli is limited in his abilities to complete a workday without interruptions from psychological symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. *Compare* (AR 833) *with* (AR 75-76, 79). Therefore, ALJ Farris was required to adequately explain why she did not include these limitations in her RFC determination, and her failure to do so is legal error. *See* SSR 96-8p, 1996 WL 374184, at *7 (explaining that if an ALJ's RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted).

The Commissioner argues ALJ Farris did not err in weighing Dr. Blacharsh and Dr. Cherry's opinions because she ultimately decided Mr. Christanelli could only perform unskilled work. (Doc. 21 at 16). First, this reason for discounting these doctors' opinions was not given by ALJ Farris, so it is an impermissible *post hoc* rationalization. In addition, the Tenth Circuit has explained that a limitation to unskilled work does not necessarily address an individual's mental limitations. *See Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012) (explaining that unskilled work "just account[s] for issues of skill transfer, not impairment of mental functions - which are not skills but, rather, general prerequisites for most work at any skill level") (citation omitted). Moreover, Mr. Christanelli's abilities to complete a workday without interruptions from psychological symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, are "critical for performing unskilled work." Social

Security Administration's Program Operations Manual System 25020.010(3)(i) ("Mental Abilities Critical for Performing Unskilled Work"). Therefore, ALJ Farris' limitation to unskilled work does not adequately account for her rejection of Dr. Blacharsh and Dr. Cherry's opinions. For these reasons, the Court finds that ALJ Farris did not properly consider these doctor's opinions.

### D. Mr. Christanelli's Request for an Immediate Award of Benefits

Mr. Christanelli cursorily asks the Court to remand this case for an immediate award of benefits "because there is medical evidence of disability in the record, and because additional fact-finding would serve no useful purpose." (Doc. 19 at 27). It is within the Court's discretion to remand for an immediate award of benefits. *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). Among other factors, courts may consider the length of time a case has been pending and, given the available evidence, whether or not remand for additional fact-finding would be useful or merely delay receipt of benefits. *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006).

Here, more than seven years have passed since Mr. Christanelli applied for benefits and this case has already been remanded one time for further proceedings. Nevertheless, the Court does not find that additional fact-finding would be futile. For example, although the record contains evidence that Mr. Christanelli has multiple mental limitations that have not yet been properly considered by the ALJ, the Court cannot say that there is substantial and uncontradicted evidence in the record that indicates Mr. Christanelli is disabled. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (explaining the court may consider whether the ALJ followed the rules of law when weighing certain evidence, but may not reevaluate the evidence or substitute its

judgment for the judgment of the Commissioner). The Court therefore will not remand for an immediate award of benefits. However, based on how long it has been since Mr. Christanelli first applied for benefits and because this is the second time his case is being remanded, the Court instructs the Commissioner to expedite consideration of his application on remand.

## V.     Conclusion

For the reasons stated above, the Court finds that ALJ Farris failed to properly consider the opinions of Dr. Morgan, Dr. Gillette, Mr. Becher, Dr. Blacharsh, and Dr. Cherry. The Court will not address Mr. Christanelli's remaining claims because they may become moot upon remand.

**IT IS THEREFORE ORDERED** that Mr. Christanelli's *Motion to Reverse for Payment of Benefits, or in the Alternative, to Remand for a Rehearing*, (Doc. 19), is **GRANTED** and this case is **REMANDED** to the Commissioner for further expedited proceedings.

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE